## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DEBRA JACKSON, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>GENFOOT AMERICA, INC.,<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Debra Jackson ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Genfoot America, Inc. ("Defendant" or "Genfoot") for the manufacture, marketing, and sale of its "Made In USA" Kamik-brand footwear. Plaintiff makes the following allegations based upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including the investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.  This is a class action on behalf of purchasers of several models of Defendant's footwear[1] in the United States.

2.  Genfoot sells several models of footwear that prominently claim to be "Made In USA." However, the Boots feature primary components made outside of the United States—including the soles of the Boots, which is an important aspect of the footwear. Thus, contrary to Defendant's representations and warranties, the Boots are not actually "Made In USA," as that

---

[1] The specific footwear models at issue are the Kamik Winter Boots (the "Boots"). Plaintiff herself purchased a pair of Kamik Greenbay 4 Winter Boots. The Boots are available in a variety of styles (men's, women's, and kids') and color patterns.

term is defined by Federal Trade Commission ("FTC") regulations, which require that products marketed as "made in America" or "made in the USA" be made "all or virtually all" in the United States.

3.      Indeed, Defendant has been called out by consumers for its deceptive representations.[2] Yet Defendant continues to knowingly make these misrepresentations because consumers are willing to pay more for products that they believe are actually made in the United States and, therefore, Defendant benefits enormously from these misrepresentations.

4.      Had Defendant disclosed that the Boots were not in fact "Made In USA," Plaintiff and members of the Classes would not have purchased the Boots or would have paid less for the Boots than they did.

5.      Plaintiff and members of the Classes were accordingly injured by the price premium they paid for the Boots due to Defendant's misrepresentation that the Boots were made in the United States when they were not.

6.      Plaintiff brings this action individually and on behalf of a class of all other similarly situated purchasers to recover damages and restitution for: (i) breach of express warranty; (ii) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (iii) unjust enrichment; (iv) fraud; (v) violation of New York General Business Law ("GBL") § 349; and (vi) violation of GBL § 350.

## PARTIES

7.      Plaintiff Debra Jackson is, and at all times relevant to this action has been, a domiciliary of Boonville, New York.  Plaintiff Jackson purchased a pair of the Boots in December

---

[2] KAMIK'S 'MADE IN USA' CLAIMS, https://www.truthinadvertising.org/kamiks-made-in-usa-claims/.

2021 from Kohl's online website while in New York. Prior to and at the time of her purchase of the Boots, Plaintiff Jackson saw and reviewed the Boots' marketing, advertising, and packaging, and saw that each of the Boots was marketed, advertised, and packaged as "Made in USA." In purchasing her Boots, Plaintiff Jackson saw and relied on Defendant's representations that the Boots were "Made in USA," and understood them as representations and warranties that the Boots were "Made in the USA." Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Jackson would not have purchased her Boots on the same terms had she known those representations were not true. In making her purchases, Plaintiff Jackson paid an additional amount for the Boots above what she would have paid for boots that do not claim to be "Made in USA." Had Plaintiff Jackson known that the "Made in USA" claim was false and misleading, Plaintiff Jackson would not have purchased the Boots, or would have paid substantially less for the Boots. Despite these injuries, Plaintiff Jackson remains very much interested in purchasing Defendant's boots as she believes that Defendant if a reputable company, appreciates Defendant's commitment to "sustainable manufacturing," and values Defendant's storied commitment to high quality winter boots. Plaintiff looks forward to purchasing Defendant's boots in the future and hopes that she can be assured that Defendant's "Made in USA" representations are accurate and compliant with FTC regulations.

8.      Defendant Genfoot America, Inc. is a Delaware corporation with its principal place of business located at 673 Industrial Park Road, Littleton, New Hampshire 03561. Genfoot markets and sells its Boots throughout the United States and the State of New York.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from

Defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members.

10.     This Court has general personal jurisdiction over Defendant because it is headquartered and maintains its principal place of business in this District.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

<u>**FACTUAL ALLEGATIONS**</u>

**I.      Genfoot Represents The Boots As Being "Made In USA"**

12.     Genfoot is a designer and manufacturer of winter footwear.

13.     Several models of Defendant's winter boots—including the Kamik Greenbay 4 model—are in Defendant's "Country of Origin—USA" ("USA") series.   The "USA" series emphasizes footwear that ostensibly is made in the United States.

14.     Several of the Boots in question prominently advertise an American flag, and the words "Made In USA," on the hangtags of the shoes.  For instance, the Greenbay 4 model bears a "Made In USA" representation on the attached hangtag of the shoe, inside an American flag logo:



15.    Further, 39 models are found on the "Country of Origin—USA" collection page of

Genfoot's own website:



//

//

//

//

//

//

16.    In addition, Genfoot prominently displays a "USA" logo beneath the product details page for each of its "Country of Origin—USA" branded shoes:



17.    Another customer who was frustrated with Genfoot's deceptive labeling shared a photo of the Boots, in which Defendant's false advertising is prominently displayed on a sticker affixed to the box as well:[3]



---

[3] TINA.org, *supra* note 2.

18.     In short, at nearly every opportunity possible—on the hangtags of the shoes, on the shoe boxes, and on the product page of Defendant's website—Genfoot prominently represents that the Boots are "Made In USA."

## II.     Genfoot Knowingly And Intentionally Violates FTC Rules Concerning "Made In USA" Representations

19.     Unfortunately for consumers, Genfoot's "Made In USA" representations are not true.  The FTC has set strict guidelines on what products can truthfully and accurately bear representations that they are "Made in the USA" or the like, and the Boots do not fit the bill.

20.     The FTC has held that "[f]or a product to be called Made in USA, or claimed to be of domestic origin without qualifications or limits on the claim, the product must be 'all or virtually all' made in the U.S."  According to the FTC, "'[a]ll or virtually all' means that all significant parts and processing that go into the product must be of U.S. origin.  That is, ***the product should contain no—or negligible—foreign content***."[4]

21.     In determining whether a product's claims are deceptive, the FTC

considers other factors, including how much of the product's total manufacturing costs can be assigned to U.S. parts and processing, and how far removed any foreign content is from the finished product. In some instances, only a small portion of the total manufacturing costs are attributable to foreign processing, but that processing represents a significant amount of the product's overall processing. The same could be true for some foreign parts. In these cases, the foreign content (processing or parts) is more than negligible, and, as a result, unqualified claims are inappropriate.[5]

22.     The FTC also provides an example of deceptive "Made in the USA" claims:

**Example:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An unqualified Made in

---

[4] Federal Trade Commission, "Complying With The Made In USA Standard," https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard (emphasis added) (last accessed Dec. 2, 2021).

[5] *Id*.

USA claim is deceptive for two reasons: The base is not far enough removed in the manufacturing process from the finished product to be of little consequence and it is a significant part of the final product.[6]

23.    The Boots do not satisfy the FTC's requirements for a "Made in the USA" product. Specifically, imported parts and/or foreign labor make up the foundation—the sole—of any one of the Boots.[7]

24.    Further, the Greenbay 4 boots are still listed on the "Country of Origin—USA" collection, even though the product page contains a small print disclaimer in small font stating, "Made in USA with foreign and Canadian components."

25.    Notably, the sole or "outsole" is one of the most important parts of a shoe.  The sole "provide[s] traction, flexibility and stability, and *to protect the rest of the shoe from the ground*. Because they face the ground, *outsoles should always be made from durable materials that hold up to frequent wear*—this is the key to creating a high-quality sole."[8]  A high-quality sole (which "Made in the USA" typically stands for, as explained below) would thus be particularly important to winter footwear—which Genfoot specializes in and which the Boots are—because it will be subject to extreme weather exposure when worn.

26.    Therefore, the Boots are analogous to the above example.  Like the imported base in the table lamp, the outsole is not far enough removed from the manufacturing process to be of little consequence, *and* it is a significant part of the Boots.  Thus, the Boots' "Made In USA" representations are false and misleading.

---

[6] *Id*.

[7] *See* TINA.org, *supra* note 2, ("these boots don't meet the FTC's 'all or virtually all' standard to be marketed as 'Made in USA.' For one thing, **the outsole is made in Canada**.") (emphasis added).

[8] Koio, "Your Guide To The Anatomy Of A Sneaker," https://www.koio.co/pages/anatomy-of-a-sneaker (emphasis added) (last accessed Dec. 2, 2021).

27.    Worse yet, Defendant knowingly and intentionally flouts these requirements.  In 1997, the FTC considered altering its "all or virtually all" standard to one that only required "that the product was substantially all made in the United States."[9]  Genfoot was among the many manufacturers and other corporations that supported the more relaxed "substantial" standard, likely because of its demonstrated advertising behavior.[10]  Obviously, the FTC elected not to change its standard for "Made in USA" claims.  Nonetheless, Genfoot continues to make false and misleading "Made In USA" claims on its Boots.

28.    Genfoot attempts to circumvent these regulations by including a small print disclaimer in small font in portions of its website and on the hangtags (but not on the shoes themselves) stating that the "Country of Origin—USA" series involves boots that are "Made in USA or made in Canada with Canadian and foreign materials."  In fact, to even discover this disclaimer on Genfoot's website, a user must hover over the "USA" icon to reveal it, as shown here:



29.    Neither Plaintiff nor any other reasonable consumer would expect that small print language on the hangtag of a product or hidden in assorted places on a website contain language inconsistent with the representations that the Boots were "Made In USA."  Nor would a reasonable

---

[9] Federal Trade Commission, "'Made in USA' and Other U.S. Origin Claims; Notice," *Federal Register* (Dec. 2, 1997), https://www.ftc.gov/sites/default/files/documents/ federal_register_notices/made-usa-and-other-u.s.origin-claims/971202madeinusa.pdf (last accessed Jan. 20, 2022) (emphasis removed).

[10] *Id.*

consumer expect that significant portion of a shoe that claims to be "Made In USA" was not actually made in the United States.

30.    Further, Defendant's disclaimer is in no way curative.  Defendant does not define the terms "materials" or "components," meaning it is unclear from the disclaimers how much of the Boots are actually made in the United States.  Moreover, the disclaimers are not conspicuously displayed such that a reasonable consumer—especially a consumer that purchased the Boots from a retail location or online source including or other than Defendant's own website—would be aware they even exist.

31.    In sum, Defendant's Boots are not properly labeled as "Made In USA" because at least one primary component of the shoe—the important outsole—is imported.

## III.    "Made In The USA" Representations Are Important To Consumers, And Consumers Are Willing To Pay More For Products That Claim To Be "Made In The USA"

32.    Defendant falsely labels its Boots as "Made In USA" solely to attract consumers and drive sales.  A "Made in the USA" or "Made in America" label is not just a simple label. Rather, it is a promise that "evokes patriotism, carries an unspoken promise of quality, and has a political undertone of job security for American workers."[11]   It signifies to consumers that the product they are buying is different and "the best on the market."[12]  For some, a "Made in America"

---

[11] Lisa Smith, "What It Takes to Be 'Made in the USA,'" *Investopedia* (Oct. 29, 2021), https://www.investopedia.com/articles/economics/12/made-in-the-usa.asp (last accessed Dec. 2, 2021).

[12] Elizabeth Brotherton-Bunch, "Why Buying American-Made Matters So Much," *Alliance For American Manufacturing* (Dec. 21, 2017) https://www.americanmanufacturing.org/blog/why-buying-american-made-matters-so-much/ (last accessed Dec. 2, 2021).

or "Made in USA" label "evoke[s] our nation's rugged individualism or impl[ies] an artisanal mystique."[13]

33.    Consumers purchase American-made goods because of their desire to help the national economy.    According to the Alliance for American Manufacturing, "[e]very $1.00 invested in U.S. manufacturing generates $1.81 in economic activity."[14]    Buying goods that are made in the United States helps promote domestic manufacturing jobs instead of the outsourcing of these jobs to foreign countries.[15]

34.    A "Made in USA" label also connotes an "implied level of [higher] quality," which motivates consumers to purchase American-made goods.[16]    The label can also help businesses communicate the "quality, durability, [and] authenticity" of their product.[17]    Americans know this. A recent survey of American consumers found that nearly half believe that products made in the United States are of a higher quality than those manufactured in other countries.[18]

35.    Consumers are willing to pay more for products that are labeled "Made in USA."[19] FTC Commissioner Rohit Chopra noted that consumers prefer goods that are made in America

---

[13] Rich Regole, "The Power of Manufacturers Using 'Made in the USA' in Marketing," *Industry Week*, (Nov. 24, 2015), https://www.industryweek.com/leadership/article/21966360/the-power-of-manufacturers-using-made-in-the-usa-in-marketing (last accessed Dec. 2, 2021).

[14] Brotherton-Bunch, *supra* note 14 (this fact is from the video).

[15] Smith, *supra* note 13.

[16] *Id.*

[17] Barry Bendes and Sharon Blinkoff, "FTC's New Rule on Made in USA Labels Precludes Advertisers from False and Misleading Statements About Products' Origin," *JD Supra*, (July 9, 2021) https://www.jdsupra.com/legalnews/ftc-s-new-rule-on-made-in-usa-labels-2306174/ (last accessed Dec. 2, 2021).

[18] Gabriel Evans and Rosemary Coates, "Survey Says: Americans Prefer 'Made In USA,'" *Reshoring Institute* (2020), https://reshoringinstitute.org/wp-content/uploads/2020/09/made-in-usa-survey.pdf (last accessed Dec. 2, 2021).

[19] *Id.*

and are willing "to pay a premium for it."[20]   And in a 2020 survey, nearly 70% of consumer respondents said they "prefer American-made products," and 83% indicated they would pay more for products manufactured in the United States.[21]

36.     For many consumers, a "Made in the USA" label signifies quality, craftsmanship, and the opportunity to support both domestic workers and the national economy.  Some Americans view products with U.S. origins as being made with more durability and higher-quality materials.

37.     Manufacturers and businesses, including Defendant, have realized how important it can be to include a "Made in USA" or "Made in America" label on a product.  In adding the label, the manufacturer may feel entitled to charge more for the product, especially because consumers have indicated that they are willing to pay more for products made in the United States. Unfortunately, this leaves unsuspecting consumers at the mercy of dishonest businesses that falsely label their products as having U.S. origins.  Consumers are forced to pay price premiums for products that do not actually deserve to be labeled as being "Made in USA," including Defendant's Boots.

38.     Genfoot charges a premium for the Boots based on the "Made In USA" representation.  For instance, of the thirty-four shoe models that fall under the "Men's Winter Boots—Country of Origin—USA" category on Genfoot's website, models range in price from $89.99 to $169.99.  However, Genfoot sells many shoe models that are ***not*** advertised as "Made in the USA" for as little as $62.99.

---

[20] Rohit Chopra, On a Motion to Adopt the Final Made in USA Rule, (July 1, 2021), https://www.ftc.gov/system/files/documents/public_statements/1591514/ prepared_oral_remarks_of_commissioner_chopra_regarding_the_final_made_in_usa_rule.pdf (last accessed Dec. 2, 2021).

[21] Evans & Coates, *supra* note 20.

39.     In short, "Made in the USA" representations are material to consumers, and consumers are willing to pay more for products that bear such representations.  Defendant has exploited this market by falsely representing its Boots as "Made In USA" and charging more for them compared to footwear that does not bear such representations.  And consumers would not have purchased the Boots—or paid substantially less for them—had they known the "Made In USA" claim was not true.

## CLASS ALLEGATIONS

40.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Boots (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Product for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

41.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the Boots in New York (the "New York Subclass").

42.     Collectively, the Class and the New York Subclass are referred to as the "Classes."

43.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based on, inter alia, changing circumstances and new facts obtained.

44.     **Numerosity**. The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Classes. Although the precise number of proposed members are unknown to Plaintiff, the true numbers of members of the Classes are known by

Defendant.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

45.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendant misrepresented and/or failed to disclose material facts concerning the Boots;

(b)    whether Defendant's conduct was unfair and/or deceptive;

(c)    whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

46.    **Typicality.**  Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Boots, and Plaintiff sustained damages from Defendant's wrongful conduct.

47.    **Adequacy of Representation.**    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

48.    **Superiority.**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims are before this Court for consistent adjudication of liability issues.

## CAUSES OF ACTION

### COUNT I
### Breach of Express Warranty
### (On behalf of the Classes)

49.     Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1-48 of this complaint.

50.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

51.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Boots were "Made in the USA," as that term is defined by the FTC.

52.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Boots were offered for sale and purchased by Plaintiff and members of the Classes.

53.     In fact, the Boots do not conform to Defendant's representations and warranties because imported parts and/or foreign labor make up at least one primary component of any one Boot manufactured by Defendant—including the soles, which are an important part of the Boots. By falsely representing the Boots in this way, Defendant breached express warranties.

54.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed because they would not have purchased the Boots, or would have paid substantially less for it, if they had known that the Boots were not made in the United States, as that term is defined by the FTC.

55.    On January 7, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

## COUNT II
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301,** *et seq.*
**(On behalf of the Classes)**

56.    Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1-48 of this complaint.

57.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

58.    The Boots are consumer products as defined in 15 U.S.C. § 2301(1).

59.    Plaintiff and members of the Classes are consumers as defined in 15 U.S.C. § 2301(3).

60.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

61.    The amount in controversy of each individual's claim is more than the sum or value of twenty-five ($25) dollars, and the aggregate amount in controversy of all claims to be determined in this suit is equal to or greater than $50,000.00.

62.    In connection with the sale of the Boots, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Boots were "Made in the USA."

63.    In fact, the Boots do not conform to Defendant's warranty because imported parts and/or foreign labor make up at least one primary component of any one Boot manufactured by Defendant—including the sole, which is an important part of the Boots.

64.    By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and members of the Classes.

65.    Plaintiff and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Boots if they knew the Boots were not made in the United States, and the "Made in the USA" claim was therefore false and misleading.

### COUNT III
**Unjust Enrichment**
**(On behalf of the Classes)**

66.    Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1-48 of this complaint.

67.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

68.    Plaintiff and members of the Classes conferred a benefit in the form of monies paid on Defendant by purchasing the Boots.

69.    Defendant voluntarily accepted and retained this benefit.

70. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the deceptively marketed boots, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

**COUNT IV**
**Fraud**
**(On behalf of the Classes)**

71. Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1-48 of this complaint.

72. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

73. As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Boots, including but not limited to the fact that the Boots were "Made in the USA."

74. These misrepresentations were made with knowledge of their falsehood. Defendant admits in the small print disclaimers that its Boots are either made in USA or Canada with Canadian and foreign materials.

75. The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Classes to purchase the Boots.

76. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Violation of New York General Business Law § 349**
**(On behalf of the New York Subclass)**

77. Plaintiff incorporates by reference and re-alleges the allegations contained in

paragraphs 1-48 of this complaint.

78.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

79.    Plaintiff Jackson and New York Subclass members are "persons" within the meaning of New York General Business Law ("GBL") § 349(h).

80.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

81.    Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

82.    In the course of Defendant's business, Defendant intentionally made false and misleading statements by holding out the Boots as "Made in the USA" when in fact they did not meet the standard of "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

83.    In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

84.    Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff Jackson, about the quality of its Boots, as discussed throughout.

85.    Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

86.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

87.    The foregoing deceptive acts and practices were directed at consumers.

88.    Defendant's misleading conduct concerns widely purchased consumer products

and affects the public interest.   Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's misleading conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Boots.

89.    Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Boots had they known the truth, and (b) they overpaid for the Boots on account of the misrepresentations and omissions, as described herein.

90.    On behalf of herself and other members of the New York Subclass, Plaintiff Jackson seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under Section 349 of the New York General Business Law. Additionally, because Defendant acted willfully or knowingly, Plaintiff Jackson and New York Subclass members seek to recover three times their actual damages.

**<u>COUNT VI</u>**
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

91.    Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1-48 of this complaint.

92.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

93.    GBL § 350a(1) provides, in part, as follows:  False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

94.    GBL § 350a(1)  provides, in part, as follows:

The term 'false advertising, including labeling of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customer or usual . . .

95.    Defendant's labeling and advertisement of the Boots were false and misleading in a material way, via affirmative statements and omissions as Defendant failed to reveal material facts in light of such representations or conduct.

96.    Specifically, Defendant advertised the Boots as "Made in the USA" when in fact they did not meet the standard for "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

97.    Plaintiff understood Defendant's misrepresentations to mean that the Boots were in fact "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

98.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

99.    This misrepresentation has resulted in consumer injury or harm to the public interest.

100.    As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Boots had they known the truth, and (b) they overpaid for the Boots on account of the misrepresentations and

omissions, as described herein.

101.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff Jackson and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Classes, that the Court enter judgment in their favor and against Defendant as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Classes, and naming Plaintiff's attorneys as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and;

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.

Dated: January 28, 2022                         Respectfully submitted,


**DOUGLAS, LEONARD & GARVEY, P.C.**

By:    */s/ Charles G. Douglas, III*
             Charles G. Douglas, III

NH Bar #669
14 South Street, Suite 5
Concord, NH 03301
Telephone:  (603) 224-1988
E-Mail:  chuck@nhlawoffice.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
Sean L. Litteral (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  ltfisher@bursor.com
        slitteral@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com
       mgirardi@bursor.com
       jdiamond@bursor.com

*Attorneys for Plaintiff*